# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

TERRIE JO SLOCUM,

                        Plaintiff,

  vs.

ANDREW SAUL,[1]
Commissioner of Social Security,

                    Defendant.

Case No. 4:18-cv-00040-TMB

## DECISION AND ORDER

On or about June 1, 2015, Terrie Jo Slocum protectively filed an application for Disability Insurance Benefits ("disability benefits") under Title II of the Social Security Act ("the Act"), alleging disability beginning November 1, 2008.[2] Ms. Slocum has exhausted her administrative remedies and filed a Complaint seeking relief from this Court.[3]

On March 10, 2019, Ms. Slocum filed an opening brief.[4] The Commissioner filed an Answer and a brief in opposition to Ms. Slocum's opening brief.[5] Ms. Slocum filed a reply brief on April 9, 2019.[6] Oral argument was not requested and was not necessary to

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] Administrative Record ("A.R.") 11, 267.

[3] Docket 1 (Compl.).

[4] Docket 12 (Slocum's Opening Br.).

[5] Docket 8 (Answer); Docket 13 (Def.'s Br.).

[6] Docket 14 (Slocum's Reply).

the Court's decision. This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[7]  For the reasons set forth below, Ms. Slocum's request for relief will be granted.

## I.  STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[8] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9]  Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[10]  In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[11]  If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[12]  A reviewing court may only consider the reasons provided by the ALJ in the disability determination

---

[7] 42 U.S.C. § 405(g).

[8] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[9] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[10] *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975) (per curiam).

[11] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[12] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

and "may not affirm the ALJ on a ground upon which [he] did not rely."[13]  An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination . . . or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[14]

## II.  DETERMINING DISABILITY

The Act provides for the payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[15]  In addition, SSI may be available to individuals who are age 65 or older, blind, or disabled, but who do not have insured status under the Act.[16]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[17]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

---

[13] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[14] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

[15] 42 U.S.C. § 423(a).

[16] 42 U.S.C. § 1381a.

[17] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[18]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[19] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[20] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[21] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert ("VE"), *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[22] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity." *The ALJ concluded that Ms. Slocum had not engaged in substantial gainful activity during the period from her alleged onset date of November 1, 2008 through her date last insured of June 30, 2011.*[23]

---

[18] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[19] 20 C.F.R. §§ 404.1520(a)(4).

[20] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[21] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[22] *Tackett*, 180 F.3d at 1101.

[23] A.R. 13.

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement. *The ALJ determined that Ms. Slocum had the following severe impairments: obesity and tobacco dependency. The ALJ concluded that fibromyalgia was not a medically determinable impairment "in the absence of the requisite evidence, but that even if it was medically established, it would have been non-severe." The ALJ also concluded that Ms. Slocum's polyneuropathy, history of eye problems with macular degeneration, varicose veins, and gastroesophageal reflux disease were non-severe. The ALJ determined that Ms. Slocum's depressive disorder and anxiety disorder were also non-severe.*[24]

**Step 3.** Determine whether the impairment or combination of impairments meets or equals the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1 so as to preclude substantial gainful activity. If the impairment is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step. *The ALJ determined Ms. Slocum did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.*[25]

---

[24] A.R. 13–14.

[25] A.R. 15.

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[26] *The ALJ concluded Ms. Slocum had the RFC to perform light work, but would be additionally limited to frequently climbing ramps and stairs, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; requiring a sit/stand option allowing her to alternate sitting or standing positions at 30 to 60 minute intervals throughout the day without moving off-task; no exposure to unprotected heights; and frequent exposure to moving machinery and hazardous machinery.[27]*

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do her past relevant work, the claimant is deemed not to be disabled. Otherwise, the evaluation process moves to the fifth and final step. *The ALJ found that Ms. Slocum was capable of performing past relevant work as a secretary and human resources assistant.[28]*

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the

---

[26] 20 C.F.R. § 404.1520(a)(4).

[27] A.R. 15.

[28] A.R. 17.

RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled. *Based on the testimony of the vocational expert and Ms. Slocum's RFC, the ALJ did not address step five.*[29]

Based on the foregoing, the ALJ concluded that Ms. Slocum was not disabled from November 1, 2008, the alleged onset date, through June 30, 2011, the date last insured.[30]

### III. PROCEDURAL AND FACTUAL BACKGROUND

Ms. Slocum was born in 1964; she is currently 55 years old.[31] She last worked full-time as a personal care attendant for her father in 2008, but "had to stop because his medical conditions got so bad that I was unable to care for him anymore."[32] She reported working as a daycare provider during and after the relevant period, but her earnings did not qualify as substantial gainful activity.[33] In the past, Ms. Slocum worked as an HR assistant and scheduling specialist, a receptionist, a sandwich maker, a floor manager, and a secretary.[34] Ms. Slocum initiated her application for disability benefits on or about June 1, 2015 with an alleged onset date of November 1, 2008.[35] On July 27, 2015, the

---

[29] A.R. 17–18.

[30] A.R. 18.

[31] A.R. 267.

[32] A.R. 17, 284, 328.

[33] In her disability report, Ms. Slocum reported working nine hours, five days a week as a babysitter for her granddaughter in 2012 only. A.R. 285. In a different SSA work report, Ms. Slocum reported working in childcare from June 2006 to March 2012. A.R. 328.

[34] A.R. 58, 274–77, 285, 328.

[35] A.R. 11, 267. The ALJ used April 17, 2015 as the application date. A.R. 11, 107.

SSA field office determined Ms. Slocum was "not disabled."[36] On October 16, 2015, Ms. Slocum requested an administrative hearing.[37] On April 26, 2017, Ms. Slocum testified by video without attorney representation at a hearing before ALJ Paul Hebda.[38] Jack LeBeau, M.D., testified as a medical expert at the hearing, but the hearing was rescheduled because the mental health medical expert was not prepared to testify at the hearing due to an administrative error.[39] A supplemental hearing was held on December 5, 2017. Ms. Slocum again testified by video without representation before ALJ Hebda.[40] Dr. LeBeau testified as the medical expert.[41] Cheryl Buechner, Ph.D., testified as the medical expert regarding Ms. Slocum's mental impairments.[42] Daniel LaBrosse testified as the vocational expert at the hearing.[43] The ALJ issued an unfavorable ruling on December 27, 2017.[44] The Appeals Council denied Ms. Slocum's request for review on

---

[36] A.R. 11, 107.

[37] A.R. 11, 113.

[38] A.R. 75–76, 84–86.

[39] A.R. 77–88.

[40] A.R. 50–57.

[41] A.R. 35–45.

[42] A.R. 47–50.

[43] A.R. 57–63.

[44] A.R. 8–18.

October 31, 2018.[45]  Ms. Slocum appealed to this Court; she is represented by counsel in this appeal.[46]

*The Medical Record*

Although the medical record is extensive in this case, there are few records from the relevant time period.[47]  The Court's review of the record is primarily focused on the period between the alleged onset date of November 1, 2008 and date last insured of June 30, 2011.  However, the following relevant records before the amended onset date are also noted:

On February 12, 1997, William Wennen, M.D., wrote a letter to the Division of Vocational Rehabilitation on Ms. Slocum's behalf.  Dr. Wennen noted that Ms. Slocum was "developing painful varicosities in the posterior aspect of her right calf."  He recommended compressive garments "be worn anytime [Ms. Slocum] is up and active."  Dr. Wennen opined that "while we may be able to alleviate some of her symptomology at this point, without the surgery and without compressive garments, and without relieving the excessive standing, [Ms. Slocum] will ultimately become quite permanently impaired and basically a "varicose vein cripple."  He recommended that Ms. Slocum "be trained in the position where standing is no longer a major portion of her occupational duties" and

---

[45] A.R. 1–5.

[46] Docket 1.

[47] The Court notes that the record before it also contains multiple duplicates of certain medical records.  To the extent possible, the Court cites the first-appearing treatment note in the record.

"[i]f at all possible she should be in a more sitting position for as much of the workday as is possible."[48]

On November 15, 2006, Ms. Slocum visited Eva Hansen, PA-C, at Tanana Valley Clinic. Ms. Slocum reported being involved in a motor vehicle accident on October 23, 2006. She reported having "some circulation problems in her legs–varicose veins" and that her feet felt "sometimes tingly previous to this." PA Hansen recommended stretching, alternating heat and ice, and walking.[49]

On January 28, 2007, Ms. Slocum went to the emergency department at Fairbanks Memorial Hospital for abdominal pain. She was taken to surgery for a laparoscopic appendectomy. On physical examination, her extremities showed "no clubbing, cyanosis or edema, and good peripheral pulses" with "[g]ood motion in all joints." Ms. Slocum was discharged on January 30, 2007.[50]

The following are the more relevant medical records between November 1, 2008 and June 30, 2011:

On June 8, 2009, Ms. Slocum saw Tatiana Olson, PA-C, at Tanana Valley Clinic. She reported migraines. On physical examination, PA Olson observed that Ms. Slocum's extremities appeared normal with no edema or cyanosis; she had an intact gait and balance; and preserved and symmetric deep tendon reflexes.[51]

---

[48] A.R. 654–55.

[49] A.R. 460–61.

[50] A.R. 407–12.

[51] A.R. 454–57.

The following are the more relevant medical records after June 30, 2011:

On July 28, 2012, Ms. Slocum presented to the emergency department at Fairbanks Memorial Hospital after a motor vehicle accident. She was treated for neck sprain/whiplash injury. On physical examination, the attending doctor observed no clubbing, cyanosis, or edema in her extremities. Ms. Slocum had 2+ pulses in all extremities distally.[52]

On August 12, 2013, Ms. Slocum saw Alena Anderson, M.D., at Fairbanks Memorial Hospital for follow up after the motor vehicle accident a year earlier on July 28, 2012. On physical examination, she had no peripheral edema.[53]

On May 15, 2013, Ms. Slocum visited Philip Chapa, PA-C, at Tanana Valley Clinic. She reported an earache in the right ear and wanted to follow up on her medications. Ms. Slocum was diagnosed with varicose veins of the leg, not otherwise specified. On physical examination, Ms. Slocum had preserved and symmetric deep tendon reflexes.[54]

On May 1, 2015, Ms. Slocum saw Bethany Chernich, D.O., at Tanana Valley Clinic for medication refills. She reported that her "known varicose veins [that Dr.] Wennen [diagnosed] [were] managed, [but] office work [was the] only [work she had been] able to perform since [her] early 30's." Ms. Slocum also reported pain upon standing and sitting and "combined with the pain from [her neck and shoulder] . . . 'life is all changed'." She also reported that she needed to have her veins in her right leg "done again." Dr. Chernich

---

[52] A.R. 478–91.

[53] A.R. 922–23.

[54] A.R. 728–31.

diagnosed Ms. Slocum with chronic varicose veins, progressively worsening. She noted that "Dr. Schuldt can be helpful in the future to discuss [options]."[55]

On June 9, 2015, Ms. Slocum followed up with Dr. Chernich. She reported numbness in the feet and lower leg pain. Ms. Slocum reported that she was not able to "sit for extended periods to pay her bills or other daily activities." She also reported that she couldn't "wear certain shoes due to pain associated with bulging varicosities at the ankle and had gained weight, but that she walked regularly. She noted that her activities of daily living were "affected by leg pain causing her to stop her activities and elevate her leg and [walk] back and forth." Ms. Slocum indicated that elevating her legs resulted in some improvement and that she had not tried over the counter compression stockings. She also reported that she wore graduated compression stockings "18 years ago when originally diagnosed," but had not tried them recently. On physical examination, Dr. Chernich observed moderate varicosities in the right calf, a large vein visible on the left calf, but no edema. Dr. Chernich made a referral for a consultation with Gabe Schuldt, M.D., for chronic varicose veins.[56]

On June 30, 2015, Ms. Slocum saw Gabe Schuldt, M.D., at Tanana Valley Clinic. Dr. Schuldt conducted an ultrasound. The ultrasound showed "[v]enous reflux from non-functioning great saphenous vein valves" on the right, "resulting in bulging varicosities." Dr. Schuldt diagnosed Ms. Slocum with varicose veins of the leg with complications. He recommended three months of "conservative therapy including compression stockings

---

[55] A.R. 743–47.

[56] A.R. 595–99.

prior to any interventions" and "[i]f no significant improvement, proceed with endovenous laser ablation to the right great saphenous vein with ambulatory phlebectomy." He also recommended daily walking, exercise, and weight reduction. Dr. Schuldt noted that Ms. Slocum's deep venous system was functioning within normal limits.[57]

On August 5, 2015, Ms. Slocum visited Raymond Wilson, M.D., for a rheumatology evaluation. As part of the evaluation, Dr. Wilson noted that Ms. Slocum had "chronic leg edema attributed to her varicose veins, and has had two or three episodes of Chilblain's in the toes each winter since – 2010." On physical examination, Dr. Wilson observed no Raynaud's or evidence of Chilblain's. He observed trace bilateral dependent edema to the ankle, but the peripheral pulses were preserved. Dr. Wilson also observed Ms. Slocum's range of motion was preserved in all extremities with no swelling, redness, or warmth.[58]

On September 22, 2015, Ms. Slocum followed up with Dr. Schuldt. Ms. Slocum reported "no significant improvement in the leg pain" and wanted to "proceed with definitive therapy." Dr. Schuldt observed moderate varicosities on the right calf, but no cyanosis, no edema, and no ulceration.[59]

On November 3, 2015, Ms. Slocum saw Dr. Schuldt. At the visit, Ms. Slocum underwent endovenous laser treatment of the right leg.[60]

---

[57] A.R. 859–63.

[58] A.R. 574–77.

[59] A.R. 761–64.

[60] A.R. 770–73.

On November 10, 2015, Ms. Slocum visited Debra Triplehorn, M.D., at Tanana Valley Clinic. She reported using graduated compression stockings daily and walking for one hour daily. Dr. Triplehorn observed no edema, no calf tenderness, no ulceration, and no varicosities.[61]

On February 14, 2016, Ms. Slocum had an ultrasound of her left and right legs. The ultrasound showed a "[s]uccessful endovenous closure of the right [great saphenous vein]."[62]

On July 11, 2016, Ms. Slocum saw Dr. Chernich for chronic "bilateral distal lower extremity numbness and tingling associated with pain." Dr. Chernich noted that Ms. Slocum had "a history of varicose veins that have caused some of her leg pain in the past treated with surgery." On physical examination, Dr. Chernich observed a normal gait and steady station.[63]

On July 18, 2016, Dr. Chernich wrote a letter on Ms. Slocum's behalf. Dr. Chernich opined that Ms. Slocum's "medical condition makes serving on jury duty inadvisable indefinitely."[64]

On November 4, 2016, Ms. Slocum followed up with Dr. Schuldt. She reported that her symptoms had improved since her vein surgery. The ultrasound taken at the appointment showed "distal GSV reflux" and "a very small 1-2mm GSV tributary in the

---

[61] A.R. 782–84.

[62] A.R. 811–12.

[63] A.R. 821–23.

[64] A.R. 824.

thigh and proximal calf, which joins the distal GSV," but there was "no evidence of DVT in the femoral vein or popliteal."[65]

On March 28, 2017, Dr. Chernich wrote a letter at the request of Ms. Slocum. Dr. Chernich noted that Ms. Slocum received vein surgery in November 2015, but "almost one year later at my post-operative visit the surgery was declared unsuccessful." She opined that Ms. Slocum "is to be considered for disability" due to her medical diagnoses.[66]

*April 26, 2017 Hearing Testimony*

On April 26, 2017, Ms. Slocum testified by video without representation at a hearing held before ALJ Paul Hebda. She asserted that her medically determinable impairments prevented her from working. These included depression, anxiety, varicose veins, a lumbar back issue, severe chemical allergies, environmental allergies, macular degeneration, and stomach and intestinal issues. She stated that "one of the main reasons that I quit my job in May of 2006" was due to her "varicose vein issue." She testified that she had "varicose vein issues that go back to 1997."[67]

Jack Lebeau, M.D., testified at the hearing as the medical expert. Based on his review of Ms. Slocum's medical records, Dr. Lebeau opined that Ms. Slocum had several diagnoses, including fibromyalgia, polyneuropathy, GERD, obesity, and tobacco dependence. He noted that Ms. Slocum had had eye problems, including macular degeneration, a hysterectomy, and varicose vein surgery, but that the vein surgery was

---

[65] A.R. 826–30.

[66] A.R. 1165–66.

[67] A.R. 75–76, 91–92.

"again out of the time zone that you're discussing."  Dr. LeBeau opined that Ms. Slocum's impairments did not meet or equal a listing and that she was capable of working with limitations.  Specifically, Dr. Lebeau opined that Ms. Slocum could lift 10 pounds continuously; 10–20 pounds frequently; sit for two hours at a time for a total of six hours, stand for one hour at a time for a total of four hours, and walk for ½ hour at a time for two hours total in an eight-hour workday; climb stairs and ramps frequently; never climb ladders or scaffolds; stoop, kneel, crouch, and crawl frequently; have exposure to moving mechanical parts frequently; and have no exposure to unprotected heights.[68]

Due to a scheduling error, Nicole Martinez, Ph.D., was unable to testify regarding Ms. Slocum's mental impairments and the hearing was continued.[69]

*December 5, 2017 Hearing Testimony*

On December 5, 2017, Ms. Slocum appeared and testified by video without representation before ALJ Hebda.  She testified that she suffered from "severe anxiety and leg pain due to back issues and varicose vein problems."  She also testified that she had stomach issues, severe allergies, and migraine headaches.  She reported that she last worked outside the home in 2006.[70]

---

[68] A.R. 77–87.

[69] A.R. 88–89.

[70] A.R. 50–57.

Jack LeBeau, M.D., testified as the medical expert. Based on his review of the record and the new records submitted since the previous hearing, Dr. LeBeau testified that he would not alter his previous RFC.[71]

Cheryl Buechner, Ph.D., testified as the mental health medical expert. Based on her review of the record, Dr. Buechner opined that during the relevant time period, Ms. Slocum's anxiety and depression were medically determinable impairments. She opined that neither would meet or equal a listing and that Ms. Slocum's mental status exams and symptoms indicated only mild limitations in functioning. Dr. Buechner testified that Ms. Slocum's anxiety was "fairly stable on the medication."[72]

Daniel LaBrosse testified as the vocational expert. Based on the ALJ's first hypothetical, VE LaBrosse testified that Ms. Slocum could perform her past relevant work as an HR assistant and secretary.[73] VE LaBrosse opined that if the hypothetical person was unable to engage in sustained work activity for a full eight-hour day on a regular and consistent basis due to a combination of medical conditions, Ms. Slocum's past relevant work would be excluded, as would any full-time employment.[74]

---

[71] A.R. 35–47.

[72] A.R. 47–50.

[73] The ALJ's hypothetical was as follows:

I have an individual of the claimant's age, education, past work experience who'd be able to perform light level work as defined by the Social Security Administration but with the following limitations. We would have frequent climbing of ramps and stairs, stooping, kneeling, crouching and crawling. We would have no climbing of ladders, ropes and scaffolding, we would have no exposure to moving machinery and hazardous machinery. Finally we would have a sit/stand option which would allow the individual to alternate sitting or standing positions say at 30 to 60-minute intervals throughout the day without moving off task. A.R. 60.

[74] A.R. 57–63.

*Function Reports*

On June 1, 2015, Ms. Slocum completed a disability report. She indicated the medical conditions limiting her ability to work were: anxiety, chronic pain, varicose vein disease, chronic asthma, stomach and intestinal problems, G[E]RD; irritable bowel syndrome, hiatal hernia, stomach ulcers, severe allergies, organ prolapse, macular degeneration in the eyes, chronic depression, migraines, obesity, lower back problems, shock sensation in both feet, and numbness in the hands. She reported that she stopped working on November 1, 2008 due to her conditions and for other reasons. She stated, "I was taking care of my father and had to stop because his medical conditions got so bad that I was unable to care for him anymore." She indicated that in the past she worked as a secretary, sandwich maker, receptionist, floor manager, personal care attendant, and HR assistant/scheduling specialist. She also reported that she worked five days a week for nine hours a day in 2012 as a babysitter for her granddaughter, but her wages were under the 2012 substantial gainful activity limit.[75] In a second disability report, filed on October 19, 2015, Ms. Slocum reported that she was scheduled to have vein surgery on November 3, 2015. She also reported that she had new diagnoses of fibromyalgia and vitamin deficiency syndrome and that they were "at least in part the cause for the chronic pain in my hips lower back and legs, which has been ongoing but undiagnosed since 2010."[76] She indicated on another Social Security Administration form that her "ability to

---

[75] A.R. 282–97, 328. *See supra* note 33.

[76] A.R. 310.

stand or sit for long periods" was affected "due to neuropathy [and] v[a]ricose veins in [her] right leg."[77]

## IV. DISCUSSION

Ms. Slocum is represented by counsel.  In her opening brief, Ms. Slocum asserts that the ALJ erred by "discount[ing] as non-severe the medically determinable impairment of varicose veins that caused [her] in 2006 to quit work."    She also argues that the ALJ failed to develop the record because the ALJ's decision did not assess Dr. Wennen's nor Dr. Chernich's opinions "for the complementary aspects of" their medical opinions.[78]  The Commissioner contests Ms. Slocum's assertions.[79]  The Court will address Ms. Slocum's arguments as follows:

A.    <u>Medical Opinions</u>

Ms. Slocum asserts that the ALJ ignored Dr. Wennen's and Dr. Chernich's medical opinions.[80]  In this case, Dr. Wennen's opinion regarding Ms. Slocum's varicose veins was rendered in 1997 and Dr. Chenrich rendered her opinion in 2017.  Dr. Wennen opined that Ms. Slocum would "benefit substantially" from surgery for her varicose veins "at some point in time" and that "persistent standing even with compressive garments will probably enhance the progression of her varicose vein disease."  He concluded that "while we may be able to alleviate some of her symptomatology at this point, without the surgery and

---

[77] A.R. 395.

[78] Docket 12 at 8; Docket 14 at 2–3.

[79] Docket 13 at 5–12.

[80] Docket 12 at 15.

without compressive garments, and without relieving the excessive standing, [Ms. Slocum] will ultimately become quite permanently impaired and basically a 'varicose vein cripple.'"  The letter by Dr. Wennen was written in response to an inquiry from the Division of Vocational Rehabilitation in Fairbanks.  Ms. Slocum's occupation at the time was waitressing.[81]  Dr. Chernich's 2017 medical summary indicated that Ms. Slocum had had vein surgery in 2015, "however, almost one year later at my post-operative visit the surgery was declared unsuccessful."  Dr. Chernich concluded that it was her opinion that "Ms. Slocum is to be considered for disability" due to her medical diagnoses.[82]

    1. *Legal Standard*

"Regardless of its source, [the SSA] will evaluate every medical opinion [it] receive[s]."[83]  Medical opinions come from three types of sources: those who treat the claimant; those who examine but do not treat the claimant; and those who neither examine nor treat the claimant.  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."[84] The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's]

---

[81] A.R. 654–55.

[82] A.R. 1165–66.

[83] 20 C.F.R. § 404.1527(c).  This section applies to applications filed before March 27, 2017.  *See* 20 C.F.R. § 404.614.

[84] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).

case record."[85]  In the Ninth Circuit, "[t]o reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."[86]  Even "if a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons supported by substantial evidence."[87]  This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."[88]  However, "[m]edical opinions that predate the alleged onset of disability are of limited relevance."[89]  But, "reports containing observations made after the period for disability are relevant to assess the claimant's disability."[90]

2. *Analysis*

ALJ Hebda did not address Dr. Wennen's or Dr. Chernich's medical opinions in his decision.  An "ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a

---

[85] 20 C.F.R. § 404.1527(c)(2).

[86] *Trevizo v. Berryhill,* 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005)).

[87] *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017).

[88] *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

[89] *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008).

[90] *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir. 1988).

substantive basis for his conclusion."[91]  In this case, it is unclear whether the ALJ gave

Drs. Wennen's and Chernich's opinions "no weight" or "little weight" as the ALJ failed to

the discuss the opinions at all.  The ALJ's discussion of any treating or examining source's

opinions was limited to the conclusion that "[n]o treating, examining, or reviewing

physician or other acceptable medical source opined [a] greater restriction" than the

restrictions testified to by Dr. LeBeau and included in the RFC.[92]  This does not constitute

a clear and convincing or a specific and legitimate reason for rejecting the medical

opinions of treating physicians Dr. Wennen and Dr. Chernich.

The Commissioner offers reasons the ALJ could have rejected Drs. Wennen's and

Chernich's opinions including: (1) the ALJ reasonably determined that Ms. Slocum's

"history of varicose vein surgery[ ] [was] outside the period at issue" based on his review

of the longitudinal evidence and medical expert testimony of Dr. LeBeau; and (2) the

"1997 medical opinion forecasting the probable progression of [Ms. Slocum]'s condition

absent corrective action is of limited value because it predates the relevant period by

nearly 12 years"; and (3) even if the ALJ erred at step two, Ms. Slocum "has not shown

that the ALJ's step two finding resulted in any harm because the ALJ resolved step two in

Ms. Slocum's favor."[93]  This approach is unavailing because the Court may not uphold an

ALJ's decision on a ground not actually relied on by the ALJ.[94]

---

[91] *Garrison v. Colvin,* 759 F.3d 995, 1012–13 (9th Cir. 2014).

[92] A.R. 15–17.

[93] Docket 13 at 5–10.

[94] *Molina v. Astrue,* 674 F.3d 1104, 1121 (9th Cir. 2012).

Accordingly, the ALJ erred by rejecting the medical opinions of Drs. Wennen and Chernich without providing clear and convincing or specific and legitimate reasons supported by substantial evidence. The error was not harmless because Dr. Wennen opined that Ms. Slocum's varicose vein disease was progressive and required her to limit her time standing and Dr. Chernich opined that based on Ms. Slocum's combined impairments, she should be considered for disability benefits.[95]

## B. The ALJ's Step Two Evaluation and RFC Determination

Ms. Slocum argues it was legal error for the ALJ to make a finding at step two that Ms. Slocum's varicose vein impairment was non-severe. Specifically, she argues that "[c]ontrary to the finding that varicose veins were documented only in 2015, years after the date last insured, the impairment was documented throughout the period at issue as manifested by medical record evidence from 1997 that forecast the course of her impairment that culminated with the 2015 surgery."[96] Further, she argues that this error "created a cascading effect," resulting in an erroneous RFC and step four analysis.[97]

### 1. *Legal Standard*

At step two of the ALJ's sequential disability evaluation, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities.[98] Basic work activities are "abilities and aptitudes

---

[95] A.R. 654–55, 1165–66.

[96] Docket 12 at 8.

[97] Docket 14 at 2.

[98] *Bowen v. Yuckert,* 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1521 (effective until March 27, 2017); *see* 20 C.F.R. § 404.614; *see also Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir. 2005) (an

necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."[99]   An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." However, step two is a "de minimis screening device to dispose of groundless claims."[100] It is "not meant to identify the impairments that should be taken into account when determining the RFC."[101]   The Ninth Circuit has found an ALJ's failure to list an impairment at step two harmless error when the ALJ considered the limitations posed by the impairment at a later step in the sequential disability evaluation.[102]

   A court should affirm an ALJ's determination of a claimant's RFC "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence."[103]   It is "proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record."[104]   In assessing an RFC, the ALJ "must consider

---

ALJ must have substantial evidence to find that the medical evidence clearly establishes that the claimant lacks a medically severe impairment or combination of impairments); 20 C.F.R. §§ 404.1520 (a), (c).

[99] 20 C.F.R. § 140.1521(b); SSR 85-28.

[100] *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996).

[101] *Buck v. Berryhill,* 869 F.3d 1040, 1049 (9th Cir. 2017).

[102] *Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007); *Buck,* 869 F.3d at 1049 (finding no prejudice and harmless error when step two was decided in plaintiff's favor).

[103] *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)).

[104] *Osenbrock v. Apfel,* 240 F.3d 1157, 1165 (9th Cir. 2001) (citing *Magallanes v. Bowen,* 881 F.2d 747, 756-57 (9th Cir. 1989).

limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"[105] And yet, courts have found that "[c]onsideration of 'the limiting effects of all impairments' does not necessarily require the inclusion of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work."[106]

### 2. *Analysis*

Here, ALJ Hebda found that Ms. Slocum's obesity and tobacco dependency were severe impairments at step two. He found that Ms. Slocum had a "history of varicose vein surgery, but outside the period at issue."[107] The ALJ noted that during the relevant period from November 1, 2008 through the date last insured of June 30, 2011, there was little record evidence "of diminished functioning." He noted that Ms. Slocum had intact balance and gait and preserved and symmetric deep tendon reflexes.[108] However, as noted in detail above, the ALJ did not address the medical opinions regarding Ms. Slocum's varicose vein disease. Thus, the ALJ erred by finding Ms. Slocum's varicose

---

[105] 20 C.F.R. § 404.1545(a)(2); SSR 96-08p, *available at* 1996 WL 374184 at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of the individual's impairments, even those that are not 'severe'."). *See also Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1224 (9th Cir. 2009) ("SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless.").

[106] *See Medlock v. Colvin,* No. 15-cv-9609-KK, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016) (emphases omitted); *Sisco v. Colvin,* No. 13-cv-01817-LHK, 2014 WL 2859187, at *8 (N.D. Cal. June 20, 2014); *Burch v. Barnhart,* 400 F.3d 676, 684 (9th Cir. 2005) (finding ALJ's decision not to include plaintiff's obesity impairment in the RFC determination was proper). The Court may cite to unpublished Ninth Circuit opinions issued on or after January 1, 2007. U.S. Ct. App. 9th Cir. R. 36-3(b); Fed. R. App. P. 32.1(a).

[107] A.R. 13–14.

[108] A.R. 16.

vein disease non-severe at step two and the error was not harmless. If the ALJ had discussed and considered Drs. Wennen's and Chernich's opinions regarding Ms. Slocum's varicose veins, it is conceivable that this impairment would constitute more than a "slight abnormality" that had "no more than a minimal effect on her ability to do work" in combination with her other impairments, resulting in a different RFC.[109]

For the reasons provided above, substantial evidence does not support the ALJ's step two determination that Ms. Slocum's varicose vein disease was non-severe.

### C. Scope of Remand

The "ordinary remand rule" applies to disability cases. Under this rule, if "the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[110] Here, the ALJ failed to address the medical opinions of Drs. Wennen and Chernich. However, these opinions were rendered well before and well after the two-year relevant period in this case. Further, Ms. Slocum's requested remedy is to remand for further proceedings. Therefore, the case will be remanded for a new hearing and decision consistent with this decision. On remand, the ALJ should discuss and weigh each treating physician's medical opinion, make a new step two determination, and adjust the RFC accordingly.

---

[109] *Smolen,* 80 F.3d at 1290.

[110] *Treichler,* 775 F.3d at 1099 (quoting *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985)).

## V. ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error. Accordingly, IT IS ORDERED that Ms. Slocum's request for relief at Docket 12 is **GRANTED** as set forth herein, the Commissioner's final decision is **VACATED**, and the case is **REMANDED** to the SSA for further proceedings consistent with this decision.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 10th day of September, 2019 at Anchorage, Alaska.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE